USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 10/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEABREEZE OFFICE ASSOCIATES, LLC,

Petitioner,

-v-

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, *et al.*,

Respondents.

1:26-cv-2970-GHW

ORDER

GREGORY H. WOODS, United States District Judge:

This order appoints Hon. Barry R. Ostrager (ret.) to serve as a neutral umpire in an insurance coverage dispute between the parties to this matter. Under the parties' arbitration agreement, the two party-appointed arbitrators were empowered to appoint an umpire to resolve disputes between them. If they could not agree upon an umpire, however, a judge of a New York court would select one. After the party-appointed arbitrators reached an impasse—unable to agree upon an umpire—the petitioner asked this Court to appoint an umpire under the agreement and Section 5 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 5, and the respondents cross-petitioned for the same relief. The parties presented nine candidates to the Court. Because Judge Ostrager combines a distinguished career on the New York bench with direct, senior-level engagement in insurance coverage matters, and because the arbitration is seated in New York and governed by New York law, the Court appoints Judge Ostrager to serve as umpire in this case.

## I. BACKGROUND

### A. The Dispute

The petitioner, Seabreeze Office Associates, LLC ("Seabreeze"), owns an office building located at 444 Seabreeze Boulevard in Daytona Beach, Florida. Dkt. No. 6 ("Pet.") ¶¶ 19–20.

Seabreeze claims that its property was damaged by Hurricane Ian on or about September 28, 2022. Pet. ¶ 24; Dkt. No. 32-1 at 1. On November 7, 2022, Seabreeze submitted a claim to its insurers, who are the respondents in this action (the "Insurers"). Pet ¶ 24; Dkt. No. 26 ("Insurers' Mem."), at 3–4. The Insurers had issued Seabreeze a commercial property insurance policy covering the period from May 30, 2022 through May 30, 2023. Dkt. No. 12 ("O'Neill Decl."), Ex. A (the "Policy").

The parties disagree about the scope of Seabreeze's loss. On August 29, 2024, the Insurers' third-party claims administrator informed Seabreeze that the portion of the claimed damage attributable to the hurricane—measured at $79,530.62—was well below the Policy's $881,550 hurricane deductible, and that no payment would be made. Dkt. No. 32-1 at 3–6. The claims administrator attributed the balance of the claimed damage to pre-existing conditions and to excluded causes of loss, including wear and tear, rust, and groundwater penetration. *Id.* Seabreeze disputed that conclusion and turned to the Policy's arbitration provision to resolve the dispute. *See generally* Dkt. No. 32 ("Seabreeze Opp.") at 2.

The Policy contains an arbitration agreement (the "Arbitration Agreement"), which requires the arbitration of disputes between the parties. Policy at 44. Pursuant to that agreement, the parties were required to submit all disputes related to the Policy to arbitration:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.
>
> Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

> Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

*Id.* The Arbitration Agreement also provides that "[t]he seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance." *Id.*

On April 8, 2025, Seabreeze invoked the Arbitration Agreement and named George W. Keys as its party-appointed arbitrator. Dkt. No. 11 ("Seabreeze Mem.") at 3. On May 7, 2025, the Insurers named Jared Greisman, Esq. as theirs. *Id.* The party-appointed arbitrators then worked to select the third member of the panel—the "umpire" described in the Arbitration Agreement.

According to the Insurers' unrebutted account of their correspondence, the exchange unfolded as follows. Insurers' Mem. at 4–5 (citing Declaration of Ashlyn M. Capote, Dkt. No. 27 ("Capote Decl.") Exs. 3–4). On September 9, 2025, Mr. Keys proposed four candidates, including Jon W. Doan. *Id.* at 4. Mr. Greisman responded on October 7, 2025 that, because the Policy calls for an arbitration proceeding seated in New York under New York law, it would be more prudent to consider candidates with experience presiding over New York arbitrations. *Id.* He proposed Hon. Michael Dolinger (ret.), Hon. Henry Pitman (ret.), and Lawrence Pollack. *Id.* Mr. Keys countered with two additional names and, in a November 6, 2025 call, voiced concern about former judges with a defense background. *Id.* After Mr. Keys asked whether Mr. Greisman could propose candidates not affiliated with JAMS, Mr. Greisman proposed Hon. Barry R. Ostrager (ret.), Hon. John Gleeson (ret.), and Hon. Christopher Droney (ret.) on January 13, 2026. *Id.* at 5. Mr. Keys replied on January 28, 2026 that he could not agree to any of them and proposed Jonathan Wilkofsky. *Id.* When Mr. Greisman asked Mr. Keys to explain his objections, Mr. Keys responded on February 20, 2026 that he was "not under any obligation to explain [his] position regarding a proposed neutral," and he renewed his proposal of Charles Murray and proposed Paul Middleton. *Id.* The party-appointed arbitrators have been unable to agree upon an umpire. *Id.* at 5. And, thus,

these petitions.

### B. The Petitions

Seabreeze filed its initial petition on April 10, 2026. Dkt. No. 1. Seabreeze filed an amended petition on April 13, 2026. Dkt. No. 6. In it, Seabreeze asked that the Court appoint as umpire one of four candidates: Jon W. Doan, Jonathan Wilkofsky, Sammy Woodard[1], or James Gilleland. Seabreeze Mem. at 6. The Insurers filed their own petition in a separate action on April 21, 2026, but withdrew it so that a single judge would decide the question. Insurers' Mem. at 1, 6. They then cross-petitioned in this action on June 15, 2026, asking that the Court appoint one of the five candidates identified by Mr. Greisman: Judge Dolinger, Judge Pitman, Judge Gleeson, Judge Ostrager, or Judge Droney. Dkt. No. 28 ("Cross Pet."); Insurers' Mem. at 8–11. The petitions were fully briefed on July 20, 2026. Dkt. Nos. 26, 27, 32, 33.

Both sides agree that the Court should appoint an umpire. Seabreeze Opp. at 4; Insurers' Mem. at 8. The Insurers' argument, in response to the Petition was twofold. First, the Insurers described the qualifications and experience of their five candidates, all of whom are former judges based in New York. Insurers' Mem. at 8–11. And the Insurers pointed to courts in this District that, when applying what the Insurers describe as identical or nearly identical arbitration provisions, appointed retired New York judges. *Id.* Second, the Insurers critiqued the qualifications of Seabreeze's candidates. In particular, the Insurers pointed out that three of the four are based in Florida, that they are not attorneys, and that their umpire experience comes from Florida appraisals, which, in the Insurers' view, differ materially from an arbitration that decides legal questions under New York law. *Id.* at 12–14. As to Mr. Wilkofsky, the only New York-based candidate on Seabreeze's slate, the Insurers argued that a career spent advocating for policyholders disqualifies

[1] Seabreeze's briefs spell this candidate's name as "Woodward." Because his curriculum vitae spells it "Woodard," the Court uses that spelling. Dkt. No. 12-3 at 1.

him from serving as a neutral. *Id.* at 14–15.

Seabreeze responded with three principal arguments. Seabreeze Opp. at 4–10. First, it argued that the Arbitration Agreement does not require a retired New York judge to serve as umpire; the only qualification that it imposes, in Seabreeze's view, is that the tribunal consist of "persons employed or engaged in a senior position in Insurance underwriting or claims." *Id.* at 4. Seabreeze contended that none of the Insurers' candidates meets that requirement, that at least one judge in this District has declined to consider retired judges for that reason, *id.* at 5 (citing *Certain Underwriters at Lloyd's, London v. Dupuy Storage & Forwarding, L.L.C.*, No. 23 Civ. 5096, Dkt. No. 30 at 3 (S.D.N.Y. Dec. 11, 2023) ("*Dupuy Storage*"), and that any ambiguity in the Policy should be construed against the Insurers as its drafters, *id.* at 5. Second, Seabreeze argued that a Florida-based umpire is best suited to the matter because the dispute concerns the physical condition of a Florida property, most witnesses are in Florida, and the umpire may be asked to inspect the building. *Id.* at 6–7. Seabreeze argued that the remaining disputes concern the scope of loss rather than any legal issue, so that familiarity with New York law should carry little weight. *Id.* at 7–8. Third, Seabreeze defended each of its candidates' qualifications. *Id.* at 8–10. Seabreeze acknowledged, however, that "the Policy at issue requires an umpire who possesses familiarity with New York law." *Id.* at 8. Seabreeze's papers did not address the qualifications of any of the Insurers' five candidates individually.

In reply, the Insurers disclaimed the position that Seabreeze attributed to them. They emphasized that they have never argued that the Arbitration Agreement requires a retired New York judge, and that Seabreeze's opposition addressed arguments the Insurers did not make. Dkt. No. 33 ("Insurers' Reply") at 1. They characterized Judge Rakoff's ruling in *Dupuy Storage* as an outlier whose brief ruling "lacks the level of analysis" in the many opinions issued by courts in this district appointing retired judges to serve as umpires. *Id.* at 3–4. The Insurers contended that the seat of

the arbitration in New York makes a New York-based umpire the more efficient choice, *id.* at 4–5; that the coverage position outlined in the August 29, 2024 letter squarely implicates New York law, *id.* at 5–6; that the arbitration has not yet begun, so that Seabreeze cannot say with certainty what issues will arise, *id.* at 6; and that Seabreeze's opposition left the qualifications of the Insurers' candidates unrebutted, *id.*

## II. LEGAL STANDARD

The parties each petition the Court to appoint an umpire, as authorized by Section 5 of the FAA, which provides the following:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5; *see also id.* § 206 ("Such court may also appoint arbitrators in accordance with the provisions of the agreement."). No party disputes the Court's authority to appoint an umpire consistent with the FAA and the Arbitration Agreement. *See* Seabreeze Opp. at 1, 4; Insurers' Mem. at 6–8.

## III. APPOINTMENT OF UMPIRE

The Court has before it nine candidates for umpire—four from Seabreeze and five from the Insurers. The parties' papers raise two threshold questions that bear on the choice among them: what the Arbitration Agreement's description of the tribunal's members requires, and how much weight the location of the insured property in Florida deserves in light of the fact that the seat of the arbitration is in New York and the fact that New York law governs. The Court addresses those questions first and then turns to the candidates.

### A. The Arbitration Agreement's Description of the Tribunal

The Court need not resolve how broadly the Arbitration Agreement's requirement that the umpire have been "engaged in a senior position in Insurance underwriting or claims" should be construed, because the candidate that the Court has selected satisfies this requirement under the reading that Seabreeze advances. "Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision." *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) (citations omitted); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("We must interpret the [FAA] as written, and the Act in turn requires that we interpret the contract as written.").

The parties disagree about how broadly the phrase "engaged in a senior position in Insurance underwriting or claims" should be read. Seabreeze contends that none of the Insurers' candidates qualifies, relying on Judge Rakoff's decision in *Dupuy Storage*, in which he declined to consider certain retired judges because of this language. Seabreeze Opp. at 5–6; *see generally Dupuy Storage*; *see also Certain Underwriters at Lloyd's, London v. Dryades YMCA*, No. 24 CIV. 6103, 2024 WL 5047303, at *5 (S.D.N.Y. Nov. 21, 2024), *report and recommendation adopted sub nom. Certain Underwriters at Lloyds, London v. Dryades YMCA*, No. 24 CIV. 6103, 2024 WL 5047665 (S.D.N.Y. Dec. 9, 2024)) (describing the ruling in *Dupuy Storage*). The Insurers respond that courts in this District have repeatedly appointed retired judges to serve as umpires under identical or nearly identical language. Insurers' Reply at 3–4 (citing, *inter alia*, *Certain Underwriters at Lloyd's London v. Weslaco Indep. Sch. Dist.*, 742 F. Supp. 3d 346, 350 (S.D.N.Y. 2024); *Certain Underwriters at Lloyd's London v. Edouch Elsa Indep. Sch. Dist.*, 729 F. Supp. 3d 378, 394 (S.D.N.Y. 2024); *Dryades YMCA*, 2024 WL 5047303, at *5). Although Seabreeze has argued that retired judges do not necessarily satisfy this requirement, it acknowledges that the phrase encompasses people whose professional work is directed at insurance claims, including lawyers who have long practiced in the field. *See* Seabreeze Opp. at 5 (citing *Certain*

*Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18 Civ. 10382, 2019 WL 760802, at *3 (S.D.N.Y. Feb. 6, 2019) (holding that a lawyer who held a senior position at a firm as an insurance lawyer "obviously occupied a 'senior position' in an enterprise that is 'engaged in' insurance-related work.")).

The Court need not rule on the outer boundaries of this disputed language, because the candidate it selects satisfies the requirement even on the reading that Seabreeze advances. As discussed below, Judge Ostrager's career includes service as lead trial counsel in many major insurance coverage cases and co-authorship of a three-volume treatise on insurance coverage disputes and a treatise on reinsurance law. Dkt. No. 27-9 at 3. That record reflects engagement with insurance claims at a senior level in addition to his judicial career.

### B. The Weight Afforded to the Location of the Insured Property

The fact that the property is located in Florida is entitled to some weight, but the selection of an umpire located in New York is appropriate given that the seat of the arbitration is in New York, and the dispute involves issues of New York law. Seabreeze argues that a Florida-based umpire is best suited to this dispute because the insured property, and most of the witnesses, are in Florida, and because the umpire may be asked to inspect the building. Seabreeze Opp. at 6–7. The Court takes that concern seriously, but it is not persuaded that it outweighs the considerations outlined below.

First, the parties agreed that "[t]he seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance." Policy at 44. Seabreeze acknowledges that the Policy "requires an umpire who possesses familiarity with New York law." Seabreeze Opp. at 8. As other courts in this District have observed when appointing umpires pursuant to arbitration agreements containing the same language, such provisions favor "an umpire based in New York whose career has made them familiar with New York law." *Edouch Elsa*,

729 F. Supp. 3d at 394. And, because the proceedings will be seated in New York, "a New York-based umpire can travel more easily, and presents lesser travel and lodging costs, than an out of state umpire." *Id.* The Court also notes that Seabreeze's own slate includes Mr. Wilkofsky, a New York-based candidate, which undercuts the premise that the location of the loss requires a Florida-based umpire.

Second, the Court is not persuaded that this dispute presents no legal questions. Seabreeze characterizes the remaining issues as matters of scope, damage assessment, and method of repair. Seabreeze Opp. at 6–7. But the Insurers' position rests on the application of Policy exclusions—for wear and tear, rust and corrosion, faulty workmanship, and groundwater penetration—to the physical conditions of the building. Dkt. No. 32-1 at 3–6. Whether those exclusions apply, and how they operate when a covered cause of loss and an excluded cause both contribute to a loss, are questions of Policy interpretation governed by the law that the parties selected. The arbitration has also not yet begun; no statement of claim has been filed and no discovery has been taken. Insurers' Reply at 6. The Court cannot assume what issues the tribunal will be asked to resolve, and the Arbitration Agreement vests the tribunal with resolving all matters disputed between the parties, including its own procedure. Policy at 44.

Third, the Court does not discount the practical importance of Florida-specific knowledge. But the panel will not consist of the umpire alone. Seabreeze's party-appointed arbitrator, Mr. Keys, is located in Florida. Seabreeze Opp. at 3. The Arbitration Agreement empowers the tribunal to fix its own procedures, including those governing discovery, "inspection of documents," and "any other matter whatsoever relating to the conduct of the Arbitration . . . ." Policy at 44. The umpire's task is to resolve disagreements between the two arbitrators, and the most valuable qualities in that role are neutrality, command of the governing law, and the ability to manage a contested process—all of which are credentials that the Court's selected umpire possesses.

### C. The Candidates

#### 1. Seabreeze's Candidates

Each of Seabreeze's candidates has considerable experience in the insurance industry, and the Court's decision should not be understood to suggest otherwise. Mr. Doan has more than forty years of experience, has served as an umpire in appraisals throughout the Midwest and Southeast, and was previously the property claims director of a third-party administrator that handled catastrophe losses for certain underwriters at Lloyd's. Dkt. No. 27-11. Mr. Woodard has served as an umpire in Florida since 2004, and Mr. Gilleland is a Florida-based adjuster and umpire with experience in several states and territories. Dkt. Nos. 27-13 at 1, 27-14 at 1–4. These are experienced claims professionals.

However, as the Insurers point out, their experience as umpires has been in insurance appraisals, in which, on the Insurers' account, the umpire resolves questions of the amount of loss, while legal questions are reserved for the courts. Insurers' Mem. at 12–13; Insurers' Reply at 9–10. Seabreeze does not contend otherwise; indeed, it characterizes the umpire's task in this case as principally one of determining the scope of loss. Seabreeze Opp. at 6–7. The record before the Court does not show that any of the three has served as an umpire in an arbitration in which the neutral resolved contested questions of New York insurance law, or in proceedings seated in New York. Nor is there any indication that they have training in the law or experience resolving the discovery and evidentiary disputes that the Arbitration Agreement expressly contemplates. Policy at 44.

Mr. Wilkofsky is a New York attorney with more than four decades of experience in insurance litigation, the author of a treatise on insurance appraisal, and general counsel to the Insurance Appraisal and Umpire Association. Dkt. No. 27-12 at 2–3; Dkt. No. 27-16. He is the one candidate on Seabreeze's slate who is both a New York lawyer and based in New York. But the

Court cannot overlook that his own materials describe a career devoted to representing policyholders and public adjusters: he has been general counsel and executive director of the New York Public Insurance Adjusters Association since 1994, and his curriculum vitae describes his work as representing "victims of insurance company misconduct." Dkt. No. 27-12 at 2–3. His website profile, which Seabreeze also submitted, describes him as "currently working to win passage of a bad-faith bill in Albany . . . ." Dkt. No. 12-2 at 5; Dkt. No. 27-16 at 4. The Court does not question Mr. Wilkofsky's ability or integrity. However, the Court concludes that a candidate whose professional identity has been so closely aligned with one side of coverage disputes is not the best choice to serve as a neutral in this case.

**2. The Insurers' Candidates**

Other than arguing that none of the Insurers' candidates satisfies the Policy's "senior position" language, Seabreeze did not address the qualifications of the Insurers' five candidates in its opposition to the cross petition, although it reserved the right to do so in its earlier submission. Seabreeze Mem. at 6 n.5; Seabreeze Opp. at 4–10. The Court has reviewed their submissions independently. Dkt. Nos. 27-6 to 27-10. Each is a retired judge of long and distinguished service. Judges Dolinger and Pitman each served for decades as a magistrate judge in this District. Judge Dolinger has been appointed as umpire by courts in this District under substantially the same arbitration provision, and his submission reports that he has chaired several arbitral panels involving property loss and business interruption claims. Dkt. No. 27-6 at 7. Judge Pitman's submission describes his work on reinsurance and title insurance coverage disputes and a bench trial of an insurance claim. Dkt. No. 27-7 at 8. Judge Gleeson served as a federal district judge for twenty-two years, was appointed umpire under the same language, Insurers' Mem. at 9–11, and has since acted as a mediator and arbitrator in commercial and employment disputes. Dkt. No. 27-8 at 3. Judge Droney served on the Second Circuit and, before that, on the District of Connecticut, and he wrote

opinions in insurance cases. Dkt. No. 27-10 at 5–6. All of them are exceptionally well-qualified.

Judge Ostrager served as a Justice of the New York State Supreme Court, in the Commercial Division, for eight and one-half years, until he retired on December 31, 2023. Dkt. No. 27-9 at 2. Before taking the bench, he was a litigation partner at Simpson Thacher & Bartlett LLP and the long-time head of its Litigation Department. *Id.* Because the Policy is governed by New York law, sustained service on the New York bench, applying New York law as the rule of decision in complex commercial disputes, is directly relevant to the umpire's task. The Insurers' other nominees, who served on federal courts, have also surely decided many matters governed by New York law, and the Court does not suggest otherwise. But the focus of Judge Ostrager's judicial service within the New York court system is a direct match with the law the parties chose.

Judge Ostrager's insurance experience is impressive. His submission describes him as "lead trial counsel in many major insurance coverage cases," including the highly publicized World Trade Center coverage dispute, in which he was lead trial counsel for Swiss Re and obtained a unanimous jury verdict. Dkt. No. 27-9 at 3. He argued *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137 (2009), before the Supreme Court, a case that resolved issues about the rights of insurers in asbestos-related bankruptcy, and his listed matters include numerous other insurance and reinsurance disputes. Dkt. No. 27-9 at 3–5. He is co-author of the *Handbook on Insurance Coverage Disputes*, a three-volume treatise now in its twenty-first edition, and of *Modern Reinsurance Law and Practice*. *Id.* at 3. He was ranked in the top band for insurance dispute resolution by Chambers for eleven consecutive years. *Id.* at 4.

That experience matters here for two reasons. First, it addresses the concern at the center of Seabreeze's opposition—that the Insurers' candidates are jurists without engagement in insurance claims. Seabreeze Opp. at 5–6. Judge Ostrager is not only a judge who has decided insurance cases; he has tried major coverage disputes and has co-authored a multi-volume treatise on the subject,

which is the kind of engagement that Seabreeze's own authorities treat as satisfying the Arbitration Agreement's description of the tribunal. *See Vintage Grand*, 2019 WL 760802, at *3. Second, because this arbitration will require the umpire to evaluate competing causation theories for a hurricane loss against Policy exclusions, a candidate who has handled large and technically complex property-coverage matters, and who has analyzed the field in published work, is well positioned to manage that task.

The Court recognizes that Judge Ostrager's work as trial counsel included representing insurers, including Swiss Re and, in *Bailey*, an insurer's interest in the settlement context. Dkt. No. 27-9 at 3. Seabreeze has not objected to him on that ground, and the Court concludes that it does not weigh against him. Unlike Mr. Wilkofsky, whose submission describes a continuing role as general counsel and executive director of an association of public adjusters, Judge Ostrager's work as an advocate ended when he took the bench. He then served for eight and one-half years as a judge, a role that required him to decide disputes impartially, including those between insurers and policyholders.

The appointment of Judge Ostrager also answers one of the concerns Mr. Keys expressed during the party arbitrators' correspondence. Mr. Keys asked whether Mr. Greisman had candidates not affiliated with JAMS, and Judge Ostrager was among the candidates that Mr. Greisman then proposed. Insurers' Mem. at 5. Judge Ostrager's submission reflects no JAMS affiliation; it is a profile from the website of Federal Arbitration, Inc. Dkt. No. 27-9 at 8.

Finally, Judge Ostrager is located in New York, where the arbitration will be seated. *Id.* at 6. The Court therefore expects that he will be able to serve efficiently. The Policy provides that the parties will bear the umpire's expenses equally, and Seabreeze has not objected to the appointment of Judge Ostrager because of his rates. Before accepting appointment, Judge Ostrager is directed to disclose his rates and any potential conflicts to the parties. The Court is confident that Judge

Ostrager will serve effectively as the neutral on this panel.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court exercises its authority to appoint Judge Ostrager as umpire. The Insurers' cross petition is granted, and Seabreeze's petition is denied. As that is the only relief sought in this case, the Clerk of Court is directed to terminate the motion pending at Dkt. No. 28 and to close the case without prejudice to either party reopening the case within thirty days if Judge Ostrager is unable or unwilling to serve as umpire in this matter. Any application to reopen filed after thirty days may be denied on that basis alone.

SO ORDERED.

Dated: October 21, 2026
New York, New York

GREGORY H. WOODS
United States District Judge

[2] The Court recognizes that it previously held in *Weslaco* that the principal differentiator among well-qualified candidates was experience as an umpire in insurance disputes. 742 F. Supp. 3d at 350. If prior service as a neutral were the only consideration, Judge Dolinger, who has been appointed as an umpire under this same arbitration provision and who reports chairing property-loss arbitral panels, would have a strong claim. Judge Ostrager's submission describes his work as counsel in arbitrations, including an ICC arbitration, but it does not report that he has served as an umpire. Dkt. No. 27-9 at 3, 5. That consideration is not dispositive here, for two reasons. First, *Weslaco* identified umpire experience as the "principal differentiator" among candidates who were otherwise comparable: the court found that all six "have deep experience in New York law and in insurance-related matters," 742 F. Supp. 3d at 350, and its decision did not address the "senior position" language. *Weslaco* did not hold that umpire experience must control in every case. This case differs. The parties dispute whether retired jurists satisfy the Arbitration Agreement's requirement that the tribunal's members be "engaged in a senior position in Insurance underwriting or claims," and they dispute how much weight the location of the loss should carry. When candidates are not equally matched on the contract's own criteria and on the circumstances of the dispute, prior service as an umpire is one important factor among several, not a tiebreaker that displaces the rest. Second, the factors that distinguish Judge Ostrager go to the specific tasks this umpire will be asked to perform. The dispute turns on the application of Policy exclusions under New York law to competing accounts of the cause of a hurricane loss. A candidate who has decided commercial disputes under New York law as a member of the state bench, and who has also tried and written about insurance coverage disputes at the highest level, is well positioned to resolve disagreements between two party-appointed arbitrators on exactly those questions. That Judge Ostrager has not yet served as an umpire is a genuine gap in his record, and the Court has weighed it. But it is offset by his eight and one-half years of impartial adjudication and by his insurance-coverage experience, which is the most direct among the retired jurists before the Court. On this record, the Court concludes that these considerations, taken together, outweigh Judge Dolinger's advantage in experience as an umpire.